IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHAFIQ HIRANI,<br>437 New York Avenue, N.W., #609<br>Washington DC 20001<br><br>   Plaintiff,<br> v.<br><br>AVIS RENT A CAR SYSTEM, LLC,<br>6 Sylvan Way<br>Parsipanny, NJ 07054<br><br>   Defendant. | Case No. _____<br><br>**JURY DEMAND** |

## COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

### NATURE OF ACTION

1. Plaintiff Shafiq Hirani ("Plaintiff") is a half-Indian and half-Iranian resident of Washington, D.C. He brings this action under 42 U.S.C. § 1981 to redress injuries he has suffered and continues to suffer as a result of Avis Rent A Car System, LLC's ("Avis") discriminatory actions at its Union Station location in Washington, D.C.

2. On September 13, 2011, Avis discriminated against Mr. Hirani because of his race, ancestry, ethnicity, and national origin when it refused to provide him with rental car service because of his race, ancestry, ethnicity, and/or national origin. While Mr. Hirani was not permitted to rent a car, a similarly-situated white male customer immediately behind Mr. Hirani in line was provided a car.

1

3. By its actions, Avis denied Mr. Hirani the right to make and enforce a contract on the same basis as white citizens in violation of 42 U.S.C. § 1981.

4. On the basis of the violations asserted herein, Mr. Hirani seeks compensatory and punitive damages, a declaratory judgment, and an injunction directing Avis to desist from and remedy its discriminatory conduct.

## PARTIES

5. Plaintiff Shafiq Hirani is of Indian and Iranian ancestry, ethnicity, and national origin. He is self-employed as a real estate developer. At all times relevant to this Complaint, Mr. Hirani was a resident of Washington, D.C.

6. Defendant Avis Rent a Car System, LLC, is a Delaware Limited Liability Company, with its corporate headquarters in New Jersey, that is in the business of providing rental car services at 5,750 locations throughout the world. At all times relevant to this complaint, Avis operated at least four offices in the District of Columbia, including the office located at Union Station, 50 Massachusetts Avenue, N.E. At all times relevant to this complaint, Avis maintained actual or constructive control, oversight, responsibility, and/or direction over the operation of the Union Station location, including all policies and practices related to management, personnel, operations, and customer service.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4).

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in the District of Columbia.

**FACTUAL BACKGROUND**

9. On September 13, 2011, Mr. Hirani left his home in Logan Circle by Circulator Bus and travelled to Union Station, arriving at approximately 11 a.m. He had made a reservation with Hertz earlier that morning for a car to drive to Baltimore, Maryland to see a friend in the hospital.

10. When he reached Union Station, Mr. Hirani was told by the Hertz rental agent that Hertz did not have any cars available. Other persons in line were similarly told that Hertz did not have any cars available.

11. After trying National Car Rental and being told that no cars were available, Mr. Hirani went to the Avis booth where he stood in line for about 10 to 15 minutes. Two rental agents were working in the booth, Michelle Thomas-Clark and Will Morris.

12. When he reached the front of the line, Mr. Hirani asked Ms. Thomas-Clark whether Avis had any cars available. She glanced at Mr. Hirani and immediately said that they did not have any cars available. She did not ask him how long he wanted to rent a car or about any details of the reservation he sought to make.

13. As Mr. Hirani began to walk away from the Avis booth he heard the gentleman who had been in line behind him ask the same female agent whether any cars were available. The man behind Mr. Hirani in line was white and also did not have a reservation with Avis. Ms. Thomas-Clark told white, male customer, William Thomas, that "yes," they had cars available. Only seconds had elapsed between when Ms. Thomas-Clark told Mr. Hirani that no cars were available and when Ms. Thomas-Clark told Mr. Thomas that there were cars available.

14. Mr. Hirani stood for a moment, unmoving, in disbelief. Upon overcoming the initial shock, Mr. Hirani went up to the other Avis rental agent, Will Morris, and asked why he

was told that there were no cars available but the man behind him was told that there were cars available.

15. Ms. Thomas-Clark interjected in an aggressive and hostile manner before Mr. Morris could respond. Ms. Thomas-Clark snapped, "don't respond to him. I'll deal with him." Mr. Hirani turned to Ms. Thomas-Clark and asked why she had told him that there were no cars available but told the man behind him that there were cars available. Ms. Thomas-Clark did not respond. He asked the question again and she again did not respond. Unable to answer his question, Ms. Thomas-Clark finally acknowledged that she could now give him a car for $72 per day. Mr. Hirani asked why she had just told him that there was no car available. Ms. Thomas-Clark did not respond. Mr. Hirani walked away, frustrated by female agent's initial lie, rude behavior, and inability to explain her treatment of him.

17. After leaving the Avis counter, Mr. Hirani spoke with Mr. Thomas, the white man who had been behind him in line and had been offered the rental car. Mr. Thomas told Mr. Hirani that he had not had a reservation, that he was given the car for one day, and that his rate was $65 for the day.

18. The next day Mr. Hirani called Avis's Union Station location and spoke to a female rental agent. He asked who was working the day before. She raised her voice and asked him why he wanted to know. Mr. Hirani said that he wanted to speak with the manager and left a message asking that the manager call him.

19. The Avis manager, Jai Brown, eventually called Mr. Hirani back. He said that cars became available immediately after Mr. Hirani had inquired about renting a car but before the white male customer behind Mr. Hirani inquired. Mr. Brown stated that he told the female rental agent, Ms. Thomas-Clark, that cars were available in the seconds between Mr. Hirani's

reaching the counter and Mr. Thomas's reaching the counter. Mr. Brown's statement was false. No one spoke to Ms. Thomas-Clark between the time Mr. Hirani inquired about a car and the time Mr. Thomas inquired about a car. The only other person in the rental booth was the other agent, Mr. Morris, who was serving other customers and did not speak to Ms. Thomas-Clark.

20. Mr. Hirani told Mr. Brown that he wanted an explanation for what had happened and an apology. Mr. Brown said that he would have Ms. Thomas-Clark call to apologize. She never called Mr. Hirani.

21. The district manager, Cindy Rogers, called Mr. Hirani about the incident about one week later. Ms. Rogers told Mr. Hirani that the reason why he was told that no cars were available was because there was a three-day minimum length of rental restriction. Mr. Hirani told Ms. Rogers that her explanation was inconsistent with Mr. Brown's explanation and that he wanted to understand what had happened. The explanation was also inconsistent with Mr. Thomas being allowed to rent a car for one day. Ms. Rogers told Mr. Hirani that she would follow up with Mr. Brown and Ms. Thomas-Clark and call him back. Ms. Rogers never called Mr. Hirani back.

22. Mr. Hirani was denied rental car service by Avis when that service was available and provided immediately thereafter to a similarly situated white person. After Mr. Hirani repeatedly asked Avis employees for an explanation for the discriminatory denial of service, Avis offered him rental service in a hostile and objectively unreasonable manner and on terms than were less favorable than the terms that had just been offered and given to a similarly situated white person.

23. Mr. Hirani frequently travels and would like to rent cars from Avis in the future provided that appropriate measures are taken to remedy the effects of the discriminatory conduct against him and to prevent similar occurrences in the future.

24. Avis failed to provide adequate anti-discrimination training to its employees at the Union Station location.

25. At all times relevant to the events described above, the rental agents were acting within the scope of their employment as employees, agents, and/or representatives of Avis. The discriminatory practices described above were carried out: (a) at the direction of and with the consent, encouragement, knowledge, and ratification of Avis; (b) under Avis's authority, control, and supervision; and/or (c) within the scope of the agent's employment.

26. Through the actions of its employees, agents, and/or representatives described above, Avis acted intentionally, maliciously, and with willful, callous, wanton, and reckless disregard for Plaintiff's federally-protected rights.

## INJURY TO PLAINTIFF

27. As a direct and proximate result of Avis's discriminatory policies and practices, Mr. Hirani has suffered, and in the future will continue to suffer humiliation, embarrassment, and mental and emotional distress.

28. Avis's discriminatory actions have made Mr. Hirani fearful of being targeted for racial profiling in other commercial establishments and fearful of being discriminated against in the future.

## FIRST CLAIM FOR RELIEF

### (Violation of 42 U.S.C. § 1981)

29. Plaintiff realleges and incorporates by reference all of the allegations set forth

in paragraphs 1 through 28 above.

30. The foregoing actions by Defendant constitute a deprivation of the right of Plaintiff to make and enforce contracts on the same terms enjoyed by white persons, in violation of 42 U.S.C. § 1981.

## PRAYER FOR RELIEF

A. Plaintiff prays that this Court grant him the following relief:

(1) enter a declaratory judgment finding that the foregoing actions of Defendant violate 42 U.S.C. § 1981 and the common law prohibition against negligent supervision;

(2) enter a permanent injunction directing Defendant and its directors, officers, agents, and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

(3) award compensatory damages in an amount to be determined by the jury that would fully compensate Plaintiff for the humiliation, embarrassment, and mental and emotional distress caused by the conduct of Defendant alleged herein;

(4) award punitive damages to the Plaintiff in an amount to be determined by the jury that would punish Defendant for its willful, wanton, and reckless conduct alleged herein and that would effectively deter Defendant from engaging in similar conduct in the future;

(5) award Plaintiff his reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(f) order such other relief as this Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff requests trial by jury as to all issues in this case.

Dated: October 16, 2013

                                           Respectfully submitted,

                                           /s/ Reed Colfax
                                           REED N. COLFAX
                                           RELMAN, DANE, & COLFAX PLLC
                                           1225 Nineteenth St., N.W., Suite 600
                                           Washington DC 20036
                                           Telephone: (202) 728-1888
                                           Facsimile: (202) 728-0848
                                           rcolfax@relmanlaw.com

                                           *Counsel for Plaintiff*